UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN WARNER<br>224 Renaissance Drive<br>Pine Hill, NJ 08021<br><br>            Plaintiff,<br><br>       v.<br><br>ELMWOOD HILLS HEALTH CARE CENTER<br>425 Woodbury Turnersville Road<br>Blackwood, NJ 08012<br><br><br>            Defendant. | DOCKET NO:<br><br>COMPLAINT WITH JURY DEMAND |

## CIVIL ACTION COMPLAINT

Plaintiff John Warner (hereinafter "Plaintiff"), by and through undersigned counsel, hereby complains as follows against Defendant Elmwood Hills Health Care Center (hereinafter "Defendant").

## INTRODUCTION

1.      Plaintiff has initiated this action to redress Defendant's violations of the Family Medical Leave Act ("FMLA"), and the New Jersey Law Against Discrimination ("NJLAD").  Defendant fired Plaintiff due to his disability and/or his need for medical leaves of absence protected by the FMLA and/or NJLAD due to Plaintiff's heart condition and need to undergo and recover from hip surgery, and/or his age. As a result of Defendant's conduct, Plaintiff suffered damages as set forth herein.

2.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FMLA.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's state law claim because, pursuant to 28 U.S.C. § 1367(a), they are supplemental to Plaintiff's underlying federal claims and arise out of the same transaction or occurrence, having the same common nucleus of operative facts.

1

4. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

5. Pursuant to 28 U.S.C. § 1397(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**PARTIES**

6. The foregoing paragraphs are incorporated herein as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a company that does business within the state of New Jersey at the address set forth in the caption.

9. At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment/engagement with Defendant.

**FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein as if set forth in full.

11. Plaintiff was born on October 3, 1954.

12. In or around May of 2014, Defendant hired Plaintiff as Director of Public Safety.

13. On or around July 24, 2017, Plaintiff tripped on stairs while responding to a patient in crisis, striking his right knee and injuring his hip.

14. Though Plaintiff considered his injury to be minor, he informed Defendant's Human Resources representative, Mary Ellen Redman ("HR Representative Redman"), of the injury.

15. The following day, due to continuing and increasing pain in Plaintiff's hip, Plaintiff requested that HR Representative Redman schedule him for an appointment with Worknet, Defendant's workers compensation administrator and medical provider.

16. Worknet took an x-ray of Plaintiff's hip, which showed no fracture.

17. In or around early-August 2017, at a follow-up appointment with Worknet, the doctor ordered an MRI of Plaintiff's hip due to Plaintiff's continued pain.

18. The MRI revealed severe arthritis in his right hip and moderate arthritis in his left hip.

19. In or around late-September 2017, Plaintiff treated with his own orthopedic surgeon, who scheduled Plaintiff for hip replacement surgery in late-January 2018.

20. Within a few days of being scheduled for hip replacement surgery, Plaintiff informed HR Representative Redman and Defendant's Director of Nursing, Kelly Shirley ("Director Shirley"), of Plaintiff's need to undergo hip replacement surgery in late-January 2018.

21. Soon thereafter, Plaintiff's direct supervisor, Simon Shain ("Supervisor Shain"), directed Plaintiff to submit a proposal for improving retention of security staff in Plaintiff's department. Though the request was unusual, Plaintiff agreed to prepare it.

22. On or around October 23, 2017, Plaintiff felt ill and called out of work.

23. The next day, on or around October 24, 2017, Plaintiff called out of work again because he continued to feel ill.

24. Plaintiff went to see his doctor and underwent an EKG, which revealed that his heart was experiencing atrial fibrillation.

25. Upon diagnosing Plaintiff's condition, Plaintiff's doctor ordered an ambulance to take Plaintiff to the hospital.

26. Cardiologists at the hospital confirmed Plaintiff's atrial fibrillation and prescribed him medication to treat the condition.

27. After being released from the hospital, Plaintiff informed Defendant, via email, of his condition and his need to take a third day (October 25th) off to ensure he had adjusted to the effects of the prescribed medication.

28. Thereafter, Plaintiff returned to work.

29. On or around October 31, 2017, Supervisor Shain fired Plaintiff due to Supervisor Shain's alleged disagreement with Plaintiff's retention proposal.

30.     Defendant's stated reason for firing Plaintiff was pretext.

31.     In reality, Defendant fired Plaintiff due to Plaintiff's disabilities (i.e. his heart and hip conditions), and/or for Plaintiff's requests for reasonable accommodations in the form of short leaves of absence due to Plaintiff's heart condition and to undergo and recover from hip surgery, and/or for taking and/or requesting FMLA-protected medical leave, and/or his age.

## COUNT I
### Violations of the Family Medical Leave Act (FMLA)
**(Interference)**

32.     The foregoing paragraphs are incorporated herein as if set forth in full.

33.     Plaintiff was an eligible employee under the definitional terms of the FMLA.

34.     At all times relevant hereto, Plaintiff was employed with Defendant for at least twelve (12) months.

35.     Further, Plaintiff had at least 1,250 hours of service with Defendant during the twelve (12) months prior to October 2017.

36.     Further, Plaintiff would have had at least 1,250 hours of service prior to the commencement of his medical leave of absence.

37.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for twenty (20) or more calendar workweeks in the current or proceeding calendar year.

38.     Plaintiff required time off from work due to his medical condition.

39.     Plaintiff's heart and/or hip conditions constituted a serious health condition within the meaning of the FMLA.

40.     Plaintiff was entitled to receive leave under the FMLA for a total of twelve (12) workweeks of leave and/or intermittent leave, and Defendant was not permitted to interfere with Plaintiff's rights under the FMLA.

41.     Plaintiff was entitled to receive leave under the FMLA for a total of twelve (12) workweeks of leave and/or intermittent leave, and Defendant was not permitted to retaliate against Plaintiff for exercising his rights under the FMLA.

42. Defendant interfered with Plaintiff's FMLA rights by firing him for having taken leave that Defendant designated and/or should have designated and treated as FMLA protected leave.

43. Defendant interfered with Plaintiff's FMLA rights by firing him to prevent him from taking further FMLA leave.

44. Defendant's actions as aforesaid constitute violations of the FMLA and have caused Plaintiff to suffer damages.

## COUNT II
### Violations of the FMLA
### (Retaliation)

45. The foregoing paragraphs are incorporated herein as if set forth in full.

46. Defendant retaliated against Plaintiff by firing Plaintiff for taking and/or requesting FMLA-qualifying absences.

47. Defendant's retaliatory actions constitute unlawful acts under the FMLA.

48. Defendant's violation of the FMLA was both willful and intentional.

49. Defendant's actions as aforesaid constitute violations of the FMLA and have caused Plaintiff to suffer damages.

## COUNT III
### Violations of the New Jersey Law Against Discrimination (NJLAD)
### (Disability/Perceived Disability Discrimination)

50. The foregoing paragraphs are incorporated herein as if set forth in full.

51. At all times relevant herein, Plaintiff's medical conditions (i.e. his heart and/or hip conditions) rendered him an individual with a disability under the NJLAD.

52. At all times relevant herein, Defendant perceived Plaintiff to be suffering from a disability within the meaning of the NJLAD.

53. Defendant fired Plaintiff because he suffers from a disability/disabilities and/or because Defendant perceived him as being disabled.

54. Defendant's actions as aforesaid constitute violations of the NJLAD and have caused Plaintiff to suffer damages.

### COUNT IV
### Violations of the New Jersey Law Against Discrimination (NJLAD)
### (Age Discrimination)

55. The foregoing paragraphs are incorporated herein as if set forth in full.

56. At all times relevant herein, Plaintiff was a member of the NJLAD's protected age group.

57. Plaintiff was qualified to perform the job he held.

58. Defendant subjected to an adverse employment action.

59. Defendant was motivated by Plaintiff's age in deciding to impose the adverse employment action.

60. Defendant's actions as aforesaid constitute violations of the NJLAD and have caused Plaintiff to suffer damages.

### COUNT V
### Violations of the New Jersey Law Against Discrimination (NJLAD)
### (Retaliation)

61. The foregoing paragraphs are incorporated herein as if set forth in full.

62. Plaintiff requested and took a short leave of absence due to his heart condition.

63. Plaintiff also informed Defendant that he would need hip replacement surgery in January of 2018, which put Defendant on notice of his need for time off to undergo and recover from said surgery.

64. Plaintiff's aforementioned requests constitute requests for a reasonable accommodation under the NJLAD.

65. Defendant fired Plaintiff because he requested a reasonable accommodation for his disability.

66. Defendant's aforementioned conduct constitutes retaliation pursuant to the NJLAD.

67. Defendant's actions as aforesaid constitute violations of the NJLAD and have caused Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating against employees or prospective employees based on their disabilities and/or need for related accommodations;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost and future lost earnings;

C. Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be awarded damages for emotional distress and/or pain and suffering (as permitted by applicable law) and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded liquidated damages under the FMLA;

F. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

G. Plaintiff's claims are to receive a jury trial.

    Respectfully submitted,

    **SWARTZ SWIDLER, LLC**

    *s/ Matthew D. Miller*
    Matthew D. Miller, Esq.
    Richard S. Swartz, Esq.
    Justin L. Swidler, Esq.
    1101 Kings Highway North, Suite 402
    Cherry Hill, NJ 08034
    (856) 685-7420
    (856) 685-7417 Fax
    mmiller@swartz-legal.com

Dated: April 11, 2018